[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff-wife (PLTF) filed her complaint on July 20, 1988 seeking a dissolution of her marriage to the defendant-husband (DEFT). In addition to the dissolution she requested custody and support for a minor child, alimony, change of name, counsel fees, property distribution pursuant to Section 46b-81, C.G.S. and further relief in law and equity. The DEFT filed his Answer and Cross-Complaint on May 21, 1990 in which admitted the basic allegations of the Complaint and sought a dissolution, a conveyance of PLTF's interest in jointly owned real estate and further relief.
The provisions of the Connecticut General Statutes pertaining to dissolution of marriages, awards of alimony, custody and support of minor children, distribution and division of marital estates, medical and life insurance and counsel fees and changes of name have been reviewed and considered in the preparation of orders that follow.
The following findings are made.
1. The PLTF and the DEFT were married on June 8, 1969 in New York, New York. Her maiden name was Ellen Ann Collins.
2. Both of the parties have resided in Connecticut more than one year prior to the filing of the complaint in this action to thereby establish the jurisdiction of this court to proceed to judgment.
3. There are two children born of this marriage and both of them are adults at this time.
4. Both testified that the marriage had broken down irretrievably and the Court is in agreement. Accordingly a finding is made that this marriage has broken down irretrievably. CT Page 4360
5. Throughout this marriage, the DEFT has made all the financial contributions to meet all the expenses of living for himself, his wife and two children. The PLTF has until the final separation maintained the home and cared for the children and assisted her husband in his work.
6. The parties were married in June of 1969 and DEFT entered medical school in the fall of that year after having spent the summer in Colorado playing professional baseball.
7. The DEFT put himself through medical school and provided for his wife and five children who were born during this period. Thereafter he entered Yale-New Haven Hospital where he completed internship, residency and surgical residency. To complete the requirements for a surgical career he was away from New Haven for varying periods of time at other medical centers.
8. Having completed his training and preparation, in 1978 he started in private practice and continued to the time of the hearing to maintain the same office. He is a surgeon and has progressed very well.
9. In contrast to the DEFT, the PLTF has no special education background nor special skills. In fact except for a short time as a cashier and for several years during the marriage as an instructor in a body building gym, she has not had any work. She has been entirely dependent upon husband for all expenses incurred, for the family and for herself personally.
10. The DEFT and the PLTF struggled very hard during the early years of this marriage while he was undergoing his medical training. During this period it became necessary for him to work well beyond the normal forty hour week. At times he had to moonlight at other instructions so that his work week escalated to sixty and even eighty hours. This heavy work week required him to line outside the family quarters. During this period the marriage was a happy one and the PLTF was a supportive wife going with the children to visit the DEFT at the hospital when time permitted.
11. The PLTF assisted the DEFT in the planning, decorating and outfitting his office. Together CT Page 4361 they also purchased their first home. After a year in the home, the PLTF found the present home at #5 Churchill Road, Howder, CT. This was a much larger home and the PLTF was granted her wish to move into it. All the financing to purchase the home and all its furnishings were provided by the DEFT. The parties were reasonably happy and were co-operating and collaborating together in all family matters. They were married when neither had any substantial assets.
12. The PLTF complained of the DEFT's supper date during a training period at Willimantic with a physician's assistant at her home. There was no proof offered of any more serious alliance than this one date. There were other complaints of activities by the DEFT which might be interpreted as signs of infidelity on his part. Nothing could be substantiated beyond creating innuendos. I do not find that the PLTF has established any extramarital conduct by the DEFT of a sexual nature. Nor do I find that any of this conduct was subjectively distasteful or disturbing to the PLTF. She referred to them in her testimony and became somewhat excited in court but I do not transfer this back to the time when the events were occurring.
13. The parties settled in Hawden and became socially active. The PLTF was interested in sports and played tennis. One evening she told the DEFT she was going out with a girl friend. This was a lie which she admitted when she confessed to having been out for drive with the club tennis pro, a male. As in the Willimantic supper date, I find each incident was not a pleasant one for the injured party but had no major impact. Of the two, however, only the PLTF deliberately lied in advance.
14. Shortly after the tennis date and shortly after the PLTF had her wish to own the more beautiful Churchill Road house gratified, she embarked on an extended extramarital sexual relationship with a neighbor, a married man. It lasted more than a year (1 1/2) and terminated when the man and his family were obliged to leave town because of the notoriety. A note had been left in the Ippolito mail box calling attention to the affair. CT Page 4362
15. Following this the PLTF became interested in body building. She entered competitions and was able to win in various events. The DEFT adopted her suggestion to establish a gym and thereby create a business. He raised some $70,000 and financed the gym which she supervised in its erection, acquisition of necessary equipment and personnel. She was the main operator of the "Phoenix Gym" as it was named. The DEFT handled the finances and received regular payments of income from this operation.
16. During this period of approximately 1984-1985, the PLTF again became involved in an extramarital sexual affair with a younger man who was a professional football player. She was with him for one week in North Carolina. She also took an apartment at the Hotel Taft, furnished it and shared it with her paramour. She also entertained him at the family home. On one of these occasions, the DEFT came home and found them in or near the bedroom. He accused the young man of having a sexual affair with his wife and that person admitted it. This did not end here. The lovers continued at the Taft Hotel until he was ready to terminate the relationship after some six months or more.
17. On the basis of the admissions to the forgoing made in court by the PLTF and Mr. Beauvais (the football player) I do find that the PLTF did commit adultery on many occasions with two males.
18. The PLTF complained strongly of her husband's conduct. His indifference to her, his overjealous concentration on his work, his long hours of work, his lack of attention to her when at home, his trips to medical conventions and seminars, his sporting trips with male friends, as being causes for her in happiness and leading her to commit the acts of infidelity.
I cannot and do not accept this as the breakdown of the marriage and the final cause leading to the separation and finally the dissolution action. He had more than sufficient cause to CT Page 4363 terminate but decided to carry on. This was so until, after a sharp disagreement, he separated and went to live at 50 Glen Parkway, Hamden. Also he told the PLTF that he was going to institute a dissolution action. Putting it in the vernacular, she beat him to the punch.
19. I do find that the DEFT could have been more attentive to his wife. Certainly he did a great deal for her from a financial point of view. However, there was none of the physical abuse that happens often in these cases. The mental and emotional upsets experienced by the PTLF including her hospitalization cannot be substantially attributed to the DEFT. I just do not believe the PLTF. Much of this was brought about by her own conduct. She found a husband who in the initial love affair was too engrossed in his business that he did not observe what was happening and was willing to trust his wife. Therefore, while both contributed to the breakdown, the major contributor was the PLTF.
20. The following orders are entered after considering the factors set forth in the statutes dealing with alimony and division of property:
1. The DEFT shall pay to the PLTF the sum of eight hundred and fifty ($850.00) dollars per much as periodic alimony for a period of ten years which shall not be undifiable as to duration. All periodic alimony shall ceases, however, upon the happening of the first of the following events: 1. the death of either party, 2. the remarriage of the plaintiff, 3. cohabitation by PLTF pursuant to the provisions of Section 46b-86b of the Conn. Gen. Stats. These weekly payments shall commence June 8, 1991.
2. As lump sum alimony, the DEFT shall pay to the PTLF the sum of One Hundred Thousand ($100,000) Dollars payable in equal monthly installments as follows: a. for the first twenty-four (24) months $2400. per month; b. thereafter the remaining balance of forty-two thousand four hundred ($42,400) dollars shall be paid in 42 monthly payments of $1,000.00 each and in the 43rd month a final payment of $400.00
This order is contemplated for the PLTF's CT Page 4364 benefit to assist her in meeting the monthly mortgage payments of principal and interest as well as taxes and insurance on the Churchill Road Residence until it is sold. It is, therefore, further ordered that, if the PLTF at any time before the property is sold and the mortgage liability extinguished, the DEFT shall thereafter make the installment payments each month to the mortgagee until said mortgage liability is removed. At such time, the DEFT shall then resume direct payment to the PLTF.
3. Title to the road estate located at 5 Churchill Road, Handen, CT. shall remain as is until sold by the parties. The PLTF shall have sole possession of said premises until the sale of the same which shall take place at the end of two years. This period is allowed to avoid a forced sale under poor market conditions. The parties may sell the property at any time and in any manner mutually agreeable remitter the two years and thereafter.
At the end of two years from this dissolution, if no other mutually agreeable arrangements have been made, the property shall be put up for sale. If the parties then cannot agree on a selling price or selection of a realtor, either one may petition the court for appropriate orders for the sale of the property.
Upon the sale of the property, the PTLF shall receive 65% of the net proceeds and the DEFT shall receive 35%. The net proceeds shall be arrived at by subtracting from the gross selling price the mortgage balance, real estate commission and the other usual administrative fees, costs and expenses usually charged to the seller. Any other liens or other encumbrances, attachments, ect. shall be deducted from the share due to the party causing the same to be placed against the premises.
During her period of residency in said premises the PLTF shall be responsible for all expenses of maintenance, repair and general upkeep as well as all utilities and other living expenses. She shall same the DEFT harmless from any of the above and shall indemnify including reasonable attorney fees.
4. The DEFT shall be the sole owner of 50 Glen Parkway, Hamden, Connecticut. The CT Page 4365 PLTF shall quitclaim her interest therein to him. The DEFT shall be solely responsible for all expenses, living and otherwise on said premises now and hereafter so long as he shall own the same and shall save the PLTF harmless indemnifying her including reasonable counsel fees.
5. The PLTF may continue the use of the Mercedes automobile for a period of one year from the date of this judgment. The DEFT shall pay the rental charges for said year including any maintenance and service charges called for in the existing rental agreement which may be in addition to the regular rental charges. The PLTF shall be responsible for gasoline expenses and for any structural damage to the car resulting from any form of accident while driving or stationery. She shall hold the DEFT harmless from any of these latter costs and indemnify including reasonable attorney fees.
The DEFT shall provide medical insurance consisting of Blue Cross, CMS and Major Medical or the equivalent thereof for the period provided by statute as the PLTF may and shall elect. Far the first two years the DEFT shall pay the premiums. After two years from this date, the PLTF shall be responsible for her coverage. PLTF shall pay for any uncovered or unreimbursed expenses.
7. The PLTF is awarded twenty percent (20%) of the DEFT's Pension/Profit Sharing Plan in existence as of the date of dissolution. Payments of benefits however shall not be paid to the PLTF until her fifty-fifth (55th) birthday, Counsel for the parties shall prepare a Qualified Domestic Relations Order (QUADRO) to be signed by the DEFT.
8. The DEFT has $500,000 life insurance with the Lincoln National Insurance Co. He is ordered to designate the PLTF to be an irrevocable beneficiary of $250,000 of said insurance. If the policy designation of beneficiary in this fashion is not permitted, then he is ordered to designate the PLTF as irrevocable beneficiary for the full $500,000 or take out a separate life insurance policy in the amount of $250,000 with the designation. CT Page 4366
The PLTF shall remain as such irrevocable beneficiary so long as the DEFT is obligated to pay alimony.
The DEFT shall furnish appropriate proof of such designation and coverage initially and annually hereafter.
9. The DEFT shall pay to Attorney Hugh Keefe on account of services rendered to the PLTF. The sum of three thousand ($3,000.00) dollars, payable in three equal monthly installments commencing with the first payment on July 1, 1991 and monthly thereafter until paid in full.
10. The DEFT shall pay to Attorney Gary Cohen twelve thousand five hundred ($12,500) dollars on account of services renderes to the PLTF payable in twelve installments of $1,000 each and an additional final installment of $500. These payments shall be made monthly commencing with the first payment and July 19, 1991.
11. All assets and movies pertaining to the "Phoenix Gym" are awarded to the DEFT to be his sold property. He shall hold the plaintiff harmless in connection with any debt associated therewith and indemnify including reasonable attorney fees.
12. The DEFT is ordered to save the PLTF harmless in connection with any jointly filed federal or state tax returns and shall indemnify her including reasonable attorney fees.
13. The oriental rugs and oil paintings and crystal and silverware located at the Churchill Road property shall be divided equally by the parties in each category. Failing to agree the parties may petition the court for a further hearing on this matter.
All other personal property on said premises except any thing this is clearly personal to the DEFT is awarded the PLTF as her sole property.
14. The PLTF shall be solely responsible for and pay all liabilities listed on her financial CT Page 4367 affidavit of October 3, 1990 and shall hold the DEFT harmless therefrom and indemnify him including reasonable attorney fees. Also any liabilities incurred since said date.
15. The DEFT shall be liable solely for all liabilities he has incurred in his practice, investments and alternative personally and shall hold the PLTF harmless and indemnify her including reasonable attorney fees.
A decree dissolving the marriage between the parties on the ground of irretrievable breakdown may enter.
Counsel are requested to collaborate in the preparation of a judgment file for the signature of the undersigned.
JOHN OTTAVIANVO, JR. State Trial Referee